FILED

Sean & Cynthia Ponce
22 Bell Vista
Foothill Ranch, Ca. 92610
Seandesign1@yahoo.com
949-289-0006

2022 DEC 27   AM 11: 45

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ~~BEE~~

FEE PAID

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN & CYNTHIA PONCE . PLAINTIFF, vs. SPECIALIZED LOAN SERVICING, LLC   DOES 1-10, Defendants | UNLIMITED CIVIL CASE NO.: **8:22-CV-02318-FWS(ADSx)** COMPLAINT FOR DAMAGES AND TO SET ASIDE FORECLOSURE SALE |

*JURY TRIAL DEMANDED*

COMES NOW, Plaintiff, Sean & Cynthia Ponce , who files this *Complaint* against the above-named defendants, and in support thereof, shows this Honorable Court the following:

I.          INTRODUCTION

1.      Plaintiff, once a consumer debtor of Specialized Loan Servicing, LLC of a Separate Trust ., seeking redress for her grievances brings allegations as follows:

a)      Request for equitable cancellation of the Assignments, Substitution of Trustee, Notice of Default, Notice of Sale, Trustee's Deed Upon Sale, Quitclaim Deed and Unlawful Detainer Judgment ;

b) Slander of Title;

c) Unfair and Deceptive Business Practices; tortious interference

e) Declaratory Judgment; and

f) Equitable and Injunctive relief.

2.      The Notice of Default recorded as Orange County Recorder was VOID from inception, so current trustee was never legally substituted as Foreclosure Trustee and

1
COMPLAINT

could not legally foreclose.

3.    The Notice of Trustee's default was VOID from inception, because Notice was VOID from inception, and Substitution of Trustee are also VOID from inception, and could not legally foreclose.

4.    A defective Substitution of Trustee and a defective Notice of Default.   Plaintiff Ashley S, Aarons has the right to question both VOID and VOIDABLE documents.

FACTS

The following is the Affidavit and time line : Exhibit A

## AFFIDAVIT OF SEAN & CYNTHIA PONCE

1. **We, Plaintiffs Sean & Cynthia Ponce,** hereby declare: We solemnly affirm that the following is true, correct, and complete to the best of our own personal knowledge and understanding. We are over the age of eighteen years. If called as a witness, we will competently testify under oath to the truth of the facts stated herein. We are Plaintiffs in this action. This declaration supports my Complaint.

2. We reside at 22 Bell Vista, Foothill Ranch, CA 92610.

3. We purchased our home brand new September 1992 for $308,000 and Sean & Cynthia Ponce (Borrowers) signed a Note and Deed of Trust for an adjustable mortgage.

4. We make our payment regularly up until 2012 we leased our home for twice the amount of rent so we could keep on paying the mortgage and keep our home. That's how much we loved our home.

5. On March 28, 2012 our eldest son, Christopher, died. This devastated our family.

6. Shortly thereafter our younger son, David, developed Paranoid Schizophrenia and has the disease currently and lives with us. This takes a tremendous toll on our family.

7. 2014 We were told that we had a business lawsuit filed against us from one of our clients. We won the case in a jury trial but the judge overturned the jury's decision and awarded all attorney fees to the opposing party. We filed an appeal, but our lawyer forgot to file a $75 court fee, and we lost the appeal because of his not paying the filing fee on time. So we ended up paying a total to both law firms and the settlement a total of $186,000. We had to file for bankruptcy.

8. 2015 We finally started working. The first big job we worked, the client ended up defrauding us our of $36,000. The client was Kirsten Wallace who currently is in jail. We filed a lien on her home, but could not collect the money because the client was sent to jail for fraud and embezzlement.

9. 1/27/16 Received notice from Residential Credit Solutions, Loan #2200075658 that our loan was being transferred to Ditech Financial.

10. 2016 We requested a loan modification from Ditech Financial.

11. 10/28/16 Received notice from Ditech Financial, Loan #648420221, that we received an updated Loan Modification but our interest rate was staying the same at 5.375%.

12. We made our payments regularly up until COVID hit in January 2020 when Specialized Loan Servicing informed us we could be on a Forbearance because all work has stopped for us. Loan # 1014659859.

13. Approx June 2021 applied for a loan modification with SLS.

14. 8/5/21 was denied a loan modification with SLS.

15. Reapplied for another loan modification with SLS.

16. Was denied a loan modification with SLS. Plaintiff's feel they were denied due process by the courts in their numerous attempts at a modification.

In the classic due process model used in civil cases, the constitutionally required **notice-and-hearing must be provided at a "meaningful time."** The default rule is that notice and a hearing must be provided before the government takes adverse action, except in exigent circumstances.

How do you prove a violation of due process?

In order to successfully establish a prima facie case for a procedural due process violation, a plaintiff must show that: (1) **there has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the government to remedy the deprivation were constitutionally inadequate.** Jun 6, 2019

Due process under the Fifth and Fourteenth Amendments can be broken down into two categories: **procedural due process and substantive due process**. Procedural due process, based on principles of fundamental fairness, addresses which legal procedures are required to be followed in state proceedings. .

What are the three requirements in procedural due process?

In administrative proceedings, procedural due process has been recognized to include the following: (1) the right to actual or constructive notice of the institution of proceedings which may affect a Defendant's legal rights; (2) a real opportunity to be heard personally or with the assistance of counsel, to present ... Nov 12, 2013

**A. Due Process - Generally**

In *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1110

(1995), the court addressed the viability of section 1983 claims premised on the Due

ProcessClause of the Fourteenth Amendment. The court stated:

The Due Process Clause of the Fourteenth Amendment provides "nor shallany

4

COMPLAINT

1  State deprive any person of life, liberty, or property, without due process of law."
2  U.S. Const. amend. XIV, § 1. The Supreme Court's interpretation of this clause
   explicates that the amendment provides two different kinds of constitutional
3  protection: procedural due process and substantive due process. *Cf.Zinermon v.
   Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100
4
   (1990).  A violation of either of these kinds of protection may form the basis for a
5  suit under section 1983.  *Id.*

6

7  The substantive component of the Due Process Clause protects those rights that
   are "fundamental," that is, rights that are "implicit in the concept of ordered
8  liberty," *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 152, 82

9  L. Ed. 288 (1937). [ ] The Supreme Court has deemed that most--but not all--of
   the rights enumerated in the Bill of Rights are fundamental; certain
10 unenumeratedrights (for instance, the penumbral right of privacy, s*ee Planned
   Parenthood v. Casey*, 505 U.S. 833, ----------- , 112 S. Ct. 2791, 2807, 120 L. Ed. 2d
11 674 (1992)) also

12 merit protection. It is in this framework that fundamental rights are
   incorporatedagainst the states. [ ] A finding that a right merits substantive due
13 process protection means that the right is protected "against 'certain
   government actions regardless of the fairness of the procedures used to
14 implement them.'" *Collins v.City of Harker Heights*, 503 U.S. 115,          , 112 S.
15 Ct. 1061, 1068, 117 L. Ed. 2d

16 261 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 665,

17 88 L. Ed. 2d 662 (1986)).

18

19 Although the Supreme Court has extended substantive due process protection
   to certain unenumerated rights, it has not extended Fourteenth Amendment
20 coverage to a host of other areas.  In fact, the Court has always been reluctant to
   expand the concept of substantive due process because guideposts for
21 responsible decision making in this uncharted area are scarce and open-ended.

22 The doctrine of judicial self-restraint requires us to exercise the utmost care
   whenever we are asked to break new ground in this field. *Collins*, 503 U.S. at
23

24 ----, 112 S. Ct. at 1068 (citation omitted). Hence, remaining largely outside the
   scope of substantive due process jurisprudence are tort law, *see Daniels*, 474 U.S.
25 at 332, 106 S. Ct. at 665, and public employment law, *see, e.g., Bishop v. Wood*,
   426 U.S. 341, 350, 96 S. Ct. 2074, 2080, 48 L. Ed. 2d 684 (1976), and *Board of*
26
   *Regents v. Roth*, 408 U.S. 564, 577-78, 92 S. Ct. 2701, 2709-10, 33 L. Ed. 2d 548
27 (1972).

28

In short, areas in which substantive rights are created only by state law (as is the
case with tort law and employment law) are not subject to substantive due process
protection under the Due Process Clause because "substantive due processrights
are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing*, 474 U.S.
214, 229, 106 S. Ct. 507, 515, 88 L. Ed. 2d 523 (1985) (Powell, J.,

concurring). As a result, these state law based rights constitutionally may be
rescinded so long as the elements of procedural--not substantive--due process
areobserved.


Substantive due process rights differ from their procedural counterparts in a
second, important fashion: the manner in which a violation of the right occurs. A
violation of a substantive due process right, for instance, is complete when it
occurs; hence, the availability vel non of an adequate post-deprivation state
remedy is irrelevant. Because the right is "fundamental," no amount of process
can justify its infringement. By contrast, a procedural due process violation is not
complete "unless and until the State fails to provide due process." *Zinermon*, 494
U.S. at 123, 110 S. Ct. at 983. In other words, the state may cure a procedural
deprivation by providing a later procedural remedy; only when the state refuses
toprovide a process sufficient to remedy the procedural deprivation does a
constitutional violation actionable under section 1983 arise.


*McKinney*, 20 F.3d at 1555-57 (footnotes omitted).  In *Skinner v. City of Miami,* 62 F.3d

344, 347 (11th Cir. 1995), *cert. denied*, 520 U.S. 1165 (1997), the court stated, "Tort law is

one such area that remains largely outside the scope of substantive due process

jurisprudence." In *Flint Electrical Membership Corp. v. Whitworth*, 68 F.3d 1309, 1313

(11th Cir. 1995), *modified on other grounds*, 77 F.3d 1321 (11th Cir. 1996), the court again

noted that in *McKinney* "the court held that § 1983 substantive due process claims arising

from non legislative deprivations of state- created property interests are no longer

cognizable in this circuit."


**B.  Procedural Due Process**

Because the Plaintiff does not assert any substantive due process violations, the court

need only address procedural due process.  The Plaintiff asserts that the defendants

denied him procedural due process of law.  Supporting this claim, the Plaintiff asserts:

27. On Nov. 10, 2022 NOTICE OF SALE ( Exhibit A) was received by Plaintiff. On

Nov. 24, 2022 Plaintiff received denial letter from Shellpoint ( Exhibit B) for a modification

on accounting methods using $936,913.44 as his principle balance and then amortizing this over

158 months to create a fictitious monthly payment of $8,772.27.  Shellpoint is notorious

for creating false numbers and making the modification process into an intellectual cross word puzzle.

.

28.The procedures used to notify the Beckman's that the County intended to
foreclose violated his due process as well as the Fair Debt Collections and
Practices Act ( FDCPA) or the procedures used  violated his due process rights
under the United States Constitution,.

*McKinney*, the court noted that "a procedural due process violation is not complete

'unless and until the State fails to provide due process'. ...........................In other

words, the state may cure a procedural deprivation by providing a later procedural

remedy; only when the state refuses to provide a process sufficient to remedy the

procedural deprivation does a constitutional violation actionable under section 1983

arise." *Id.*, at 1557 (citation omitted).  *Accord, Flint Elec.*

*Membership Corp.*, 68 F.3d at 1313.  If an adequate state process is available to rectify the

deprivation, the purported violation is not actionable under section 1983.  *Flint Elec.*

*Membership Corp.*, 68 F.3d at 1313.

In addition,  Plaintiff Charles D. Beckmann alleges a violation of Federal Rule (60) (b) for

"fraud upon the court" or error in that The Bank of New York Mellon is claiming to be the

Trustee of Securitized Trust but now the Trust is suddenly sold to someone else In addition, the

attorneys for Defendant's did not send out a proper Notice of Foreclosure with a copy of the

actual advertisement. The right hand did not know what the left hand was doing as Mr.

Beckman was in an "active" modification in violation of FDCPA .

Who is the real party in interest ? Where are the assignments ? There appears to be a wrongful

Foreclosure due to a break in the chain of title.

1. It is true that fraud appears in many guises. "[I]t is as old as falsehood and as versatile as human ingenuity." But it is not simply a label that may be applied to any set of puzzling circumstances. A popular legal reference defines "fraud" as "a knowing misrepresentation of the truth or concealment of a material fact [or a misrepresentation made *451 recklessly without belief in its truth] to induce **282 another to act to his or her detriment." **Black's Law Dictionary,** p. 731 (9th ed. 2009).

2. It further defines "fraud on the court": "... a lawyer's or party's misconduct so serious that it undermines or is intended to undermine the integrity of the proceeding. Examples are bribery of a juror and introduction of fabricated

evidence." *Id*. at 732. The tort of fraud similarly is based on a knowing or reckless misrepresentation.

3. The case law does not expressly make clear upon whom the fraud must have been committed.

4. It is unclear whether the fraud referred to is a fraud between the parties or a fraud upon the Court. At argument and its brief, though, Plaintiff conceded that the fraud required to open an adversarial complaint for lack of endorsements on the note is a fraud upon the court, but maintained that the averments it has made regarding involvement in signing the assignment were, in fact, a fraud upon the court, which has been defined as

"[i]n a judicial proceeding, a lawyer's or party's misconduct so serious that it undermines or is intended to undermine the integrity of the proceeding."

***Black's Law Dictionary*** (9th ed.2009).

We do agree that the fraud necessary to open this was a lack of on the note which is fraud upon the court, but we do not agree that Defendant established that such fraud has been committed in this case.

Actions for fraud upon the court are so rare that, to our knowledge, no Pennsylvania court has articulated a legal definition of the concept. The Third Circuit has only recently passed upon the topic, noting that "[t]he concept of fraud upon the court challenges the very principle upon which our judicial system is based: the finality of a judgment." ***Herring v. United States,*** 424 F.3d 384, 386–87 (3d Cir.2005). In ***Herring***, the Third Circuit, recognizing that it, too, had never articulated a test for determining whether fraud had been committed upon the court, established a demanding standard of proof.

In order to meet the necessarily demanding standard for proof of fraud upon the court we conclude that there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. We further conclude that a determination of fraud on the court may be justified only by the most egregious

misconduct directed to the court itself, and that it must be supported by clear, unequivocal and convincing evidence.  Id. (internal quotations omitted).

Defendant is far from meeting this burden. Even if we assume arguendo that Ms. Esposito's actions constitute intentional fraud under Pennsylvania law, there is no indication that she is an officer of the court. An officer of the court is "[a] person who is charged with upholding the law and administering the judicial system," specifically judges, clerks, sheriff deputies and attorneys. **Black's Law Dictionary** (9th ed.2009). Ms. Esposito is a vice president and assistant secretary for Mortgage Electronic Registration Systems, which hardly qualifies her as an officer of the court. It is not the responsibility of the Court to investigate the validity of signatures on assignments of mortgages. That responsibility belongs to the parties.

**HSBC Bank USA, Nat. Ass'n v. Mid Cty. Res**., No. 3055 CV 2010, 2014 WL 10589052, at *3 (Pa. Com. Pl. Jan. 22, 2014).

In **Hazel-Atlas**,4 the Supreme Court of the United States in a civil case recognized an exception to the general rule "that judgments should not be disturbed after the term of their entry has expired," and held that federal courts have an inherent power to "set aside their judgments after the expiration of the term at which the judgments were finally entered...under certain circumstances, one of which is after-discovered fraud." **Hazel-Atlas**, 322 U.S. at 244. To meet the "demanding standard" and prove a claim of fraud on the court, petitioner must show there was: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court." **Herring v. United States**, 424 F.3d 384, 390 (3d Cir. 2005). "[A] determination of fraud on the court may be justified only by 'the most egregious misconduct directed to the court itself,' and that it 'must be supported by clear, unequivocal and convincing evidence.'" Id. (quoting **In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions**, 538 F.2d 180, 195 (8th Cir. 1976)) (emphasis added). The court in **United States v. Rodriguez** explained:

*5 The equitable power to set aside a prior judgment for fraud on the court is extraordinary, with few of the limitations that otherwise constrain motions for relief from a judgment due to fraud under Rule 60(b)(3) of the Federal Rules of Civil Procedure or independent actions for relief from a judgment due to fraud. **United States v. Rodriguez**, Crim. Action No. 98-362-12, 2012 WL 162297, at *4 (E.D. Pa. Jan. 18, 2012) (citing 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KANE, **FEDERAL PRACTICE AND PROCEDURE** § 2870, at 411-13 (4d ed. 1995)) (emphasis added).

*Ferguson v. United States*, No. 03-72, 2016 WL 1578777, at \*4–5 (W.D. Pa. Apr. 20, 2016).

II.                              THE PARTIES

5.      Plaintiff, Sean & Cynthia Ponce trustee for Sean & Cynthia Ponce , is now, and at all times relevant to this action, has been a resident of Orange  County, in the State of California. At all times relevant to this action, Plaintiff has owned and has had superior claim to the Real Property (the "Home") located at 22 Bell Vista, Foothill Ranch, , Orange County.  The property is more thoroughly described:  State of California, County of Los Angeles, :. Parcel

6.      Defendants Specialized Loan Servicing, LLC of a separate trust , 8742 Lucent Blvd., Suite 300, Highlands Rance, Co. 80129. John Does, 1-10  Inclusive, is holding place for defendants whose names are unknown at this time.

7.      Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

8.      Plaintiff continues to suffer monetary damages as a result of defendants' unlawful and improper conduct including, but not limited to, making payments to defendants and or incurring other costs related to the defense of defendants' improper efforts to collect relinquished debts from Plaintiff.

9.      Plaintiff will need to propound discovery on Defendants to obtain further information to determine the securitization parties involved in the instant transaction.

III.                     JURISDICTION AND VENUE

10.      Jurisdiction is proper in this Court, as the acts\actions complained of herein effected citizens living in within this Court's jurisdiction.

11
COMPLAINT

11.     Venue is proper in this County because this is the county where the acts/actions complained of, took place in Orange County .

7.     A claim of title based on a title document alleged to have been lost or destroyed can only be established by clear, unequivocal and convincing evidence.  This heightened burden of proof has been imposed by the courts in order to avoid fraud.

8.     All proper parties need to be named and included in instruments of conveyance.

9.     A break in the chain of title occurs when all proper parties have not been included on the conveying instrument. Thus, there is a problem if title was vested in both A and B, but only B conveyed out.

10.     An assignment, grant or conveyance shall be void as against any subsequent purchaser or Mortgagee for a valid consideration, without notice, unless it is recorded in the County Recorder's Office within three months of its date or prior to the date of such subsequent purchase  or mortgage.

11.     In short, if an assignment is not recorded with three months after signing, the assignee stands at risk of having its rights subordinated to a subsequent bona fide purchaser or lender acting without notice of the assignment.

12.     Plaintiff is suggesting that the entities involved in the case at bar, although they have been fined many times for their parts in illegal acts concerning real property and foreclosures, will stop their fraudulent actions for no one and no thing, beginning with the Notary, and through anyone and everyone that has touched the properties or the paperwork, through to the date Plaintiff filed this civil action.

13.     The case closest on point to the Ponce's  case is *Yvanova V. New Century Mortgage Corporation*, No 8218973, Feb. 18, 2016, Ca. Supreme Court which states:

A deed of trust may thus be assigned one or multiple times over the life of the loan it secures. But if the borrower defaults on the loan, only the current beneficiary may direct the trustee to undertake the nonjudicial foreclosure process. "[O]nly the 'true owner' or 'beneficial holder' of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law." (*Barrionuevo v. Mortgage Lender Services, Inc. Bank, N.A.* (N.D.Cal.2012) 885

F.Supp.2d 964, 972; see *Herrera v. Mortgage Lender Services, Inc. National Trust Co*. (2011) 196 Cal.App.4th 1366, 1378 [bank and reconveyance company failed to establish they were current beneficiary and trustee, respectively, and therefore failed to show they "had authority to conduct the foreclosure sale"]; cf. *U.S. Bank Nat. Assn. v. Ibanez* (Mass.2011) 941 N.E.2d 40, 51 [under Mass. law, only the original mortgagee or its assignee may conduct nonjudicial foreclosure sale].).

14.     In *Glaski, supra*, 218 Cal.App.4th 1079, 1094–1095, the court held a borrower may base a wrongful foreclosure claim on allegations that the foreclosing party acted without authority because the assignment by which it purportedly became beneficiary under the deed of trust was not merely voidable but void. Before discussing Glaski 's holdings and rationale, we review the distinction between void and voidable transactions.

15.     A void contract is without legal effect. (Rest.2d Contracts, § 7, com. a.) "It binds no one and is a mere nullity." (*Little v. CFS Service Corp*. (1987) 188 Cal.App.3d 1354, 1362.) "Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it." (*Colby v. Title Ins. and Trust Co*. (1911) 160 Cal. 632, 644.) As we said of a fraudulent real property transfer in *First Nat. Bank of L.A. v. Maxwell* (1899) 123 Cal. 360, 371, " 'A void thing is as no thing.'".

FIRST CAUSE OF ACTION:
<u>EQUITABLE CANCELLATION OF THE ASSIGNMENT, SUBSTITUTION OF
TRUSTEE, NOTICE OF DEFAULT & NOTICE OF SALE, VIOLATION OF DUE
PROCESS</u>
(all Defendants)

16.     Ever since 2019, it has been alleged that Plaintiff's Note and Deed were placed into the Trust.

17.     Plaintiff alleges that shortly after the origination of the loan, Mortgage Specialized Loan Servicing,  LLC's .attempted to securitize that loan into the Trust; but in order for Plaintiff's Mortgage to be a part of the Trust, the entities involved were required, but failed to follow various agreements and established laws, including the Trust Agreement that governed the creation of the Trust.

18.     Plaintiff alleges that the entities involved with the attempted securitization, failed to

adhere to the requirements of the Trust Agreement, which is necessary to properly assign the Mortgage loan into the Trust.

19.    As a result, Plaintiff's loan was never assigned to SLS as trustee  and the loan is therefore, not part of the Trust res.

20.    This fatal defect renders defendants' third party strangers to the underlying debt, and without the power or right to demand payment, declare default, negotiate the loan and foreclose on the property.

21.    The loan had been transferred to the Trust after 2019, as alleged, the loan was no longer in the possession of the real party in interest..

22.    Plaintiff filed this civil action, only after researching the following information:  (1)  had a title report and analysis done of the County Records;  (2)  Had direct oral and written communications with defendants;  (3)  News articles, research reports, complaints by Attorneys General from numerous states, publicly available securitization documents and practices;  (4)  Professional review of the Assignment of Deed of Trust;  and (5)  had a Professional Auditor, scrutinize Defendant SLS, trustee of a separate trust  filings with the Securities and Exchange Commission ("SEC"), including  Servicing Agreements, and Los Angeles County filings.

23.    The information that Plaintiff had begun searching for, was the identity of the true owner of the loan, as Plaintiff had repeatedly been denied pertinent information, that he was entitled to.

24.    The other issue that Plaintiff was searching to learn, was the secured, unsecured status of Plaintiff's Note and Deed of Trust.

25.    Based upon the research and the Audit, Plaintiff believes and thereon alleges that Plaintiff's Note was supposed to be properly securitized as a mortgage-backed security that is "pooled" together into a trust pool.

26.    The Trust is regulated by New York and Delaware Trust Laws.  Plaintiff alleges that his Note was not properly securitized and that the SLS, trustee of a separate trust has no legal, equitable, or monetary interest in his Promissory Note such that it can demand

payment from Plaintiff.

27.     "Under New York Trust Law, every sale, conveyance or other act of the trustee in contravention of the trust is void". (EPTL § 7–2.4.)

28.     "Therefore, the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void." (*Mortgage Lender Services, Inc.  v. Erobobo* (Apr. 29, 2013) 39 Misc.3d 1220(A), 2013 WL 1831799, slip opn. p. 8; see *Levitin & Twomey, Mortgage Servicing, supra,* 28 Yale J. on Reg. at p. 14, fn. 35 [under N.Y. law, any transfer to the trust in contravention of the trust documents is void].) *Glaski v. Bank of Am*., 218 Cal. App. 4th 1079, 1097, 160 Cal. Rptr. 3d 449, 463 (2013).

29.     Therefore, the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void." (*Mortgage Lender Services, Inc. v. Erobobo* (Apr. 29, 2013) 39 Misc.3d 1220(A), 2013 WL 1831799, slip opn. p. 8; see *Levitin & Twomey, Mortgage Servicing, supra*, 28 Yale J. on Reg. at p. 14, fn. 35 [under N.Y. law, any transfer to the trust in contravention of the trust documents is void].) *Glaski v. Bank of Am*., 218 Cal. App. 4th 1079, 1097, 160 Cal. Rptr. 3d 449, 463 (2013).

30.     Because Specialized Loan Servicing, LLCof a separate trust was  in violation of Civil Code 1095 et al, which states:  "When an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact.

31.     The Substitution of Trustee (Exhibit 8) "as Attorney in Fact for SLS, et al  was not properly assigned.

32.     Additional allegations are made, such as violations of California Civil Code 1095, therefore neither Res Judicata nor Collateral Estoppel for Claim Preclusion applies here.

33.     This Cause of Action was not a Cause of Action in the Previous Complaint  was not named: "EQUITABLE CANCELLATION OF THE ASSIGNMENT, SUBSTITUTION OF TRUSTEE AND NOTICE OF TRUSTEE'S SALE"

34.     A Substitution of Trustee by a non-Beneficiary is a violation of Civil Code 1095, rendered the Substitution of Trustee, not voidable, but in fact VOID.

35.     Additionally, the 4/15/21 Notice of Default names as Beneficiary SLS which was never Beneficiary of the Deed of Trust.

36.     Violations of Civil Code 1095 used in Claims for Equitable Cancellation are not new.

37.     For Stare Decisis see:  *Hodge v. Hodge*, 257 Cal.App.2d 31 (1967); *Mitchell v. Benjamin Franklin Bond & Indem. Corp*., 13 Cal.App.2d 447, 448; *Azevedo v. Pimentel*, 127 Cal.App. 299; In *Morrison v. Bowman*, 29 Cal. 337, 352; *Sunset Mill. & Grain Co. v. Anderson*, 39 Cal.2d 773; In *Puccetti v. Girola*, 20 Cal.2d 574.

38.     Plaintiff only learned of these misrepresentations after Defendants' refusals to provide pertinent information that Plaintiff had a right to, during a email mentioned in Exhibit A and various texts Exhibit B..

39.     Until that time, the information had been secreted from Plaintiff, and therefore the claims are not time barred;

40.     Plaintiff has ability to qualify for a modification, or a Covid19 forbearance but was denied.

41.     In July, 2021 , Plaintiff received  a letter from Servicer, in response to Plaintiff's written inquiry concerning the servicing of their  loan, and other issues.

42.     It has not been determined if the loan is held in a private trust or a securitized trust. Under New York Trust Law, every sale, conveyance or other act of the trustee in contravention of the trust is void. EPTL § 7–2.4. Therefore, the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void." (*Mortgage Lender Services, Inc. v. Erobobo* (Apr. 29, 2013) 39 Misc.3d 1220(A), 2013 WL 1831799, slip opn. p. 8; see *Levitin & Twomey, Mortgage Servicing, supra*, 28 Yale J. on Reg. at p. 14, fn. 35 [under N.Y. law, any transfer to the trust in contravention of the trust documents is void].) *Glaski v. Bank of Am*., 218 Cal. App. 4th 1079, 1097, 160 Cal. Rptr. 3d 449, 463 (2013).

43.     Plaintiff requests the Court to declare the Assignment VOID

44.     Plaintiff requests the Court to declare the Substitution of Trustee VOID.

45.     Plaintiff requests the Court to declare the Notice of Default VOID.

46.     Plaintiff requests the Court to declare the Notices of Trustee's Sale by Quality VOID.

## SECOND CLAIM FOR RELIEF
### SLANDER OF TITLE
#### (all Defendants)

47.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

48.    Generally, one must prove the following to bring a legally sufficient claim of Slander of Title:  a)  There was communication to a third-party of:  i)  A false statement;  ii)  Derogatory to another's title;  iii)  With malice; and iv)  Causing special damages.

49.    Because of the above-enumerated violations of Civil Code 1095, false statements in the Assignments and Substitutions of Trustee were recorded which were derogatory to Plaintiff's title, and were signed knowing that they were false allegations, which were maliciously done with possible fraud, with an intent to slander title.

50.    There are no UCC 1 Financial Statements perfecting personal property interest in the Accommodated Deed of Trust contract enforcement rights with the Secretary of State's Office where the Real Property resides, giving constructive notice to the world of the true capacity of the purported parties.[1]

51.    Such instruments remained unrecorded as "Secret Liens" within the collateral file and never submitted for recordation to perfect Defendant's rights to the Accommodated Tangible Note and pledged Deed of Trust lien and the right to enforce an alternate means of collection.

52.    Defendants, by withholding such facts have potentially committed a grave error Slander of Title causing special damages.

53.    The act of recording the purported Assignment of Deed of Trust, Substitution of Trustee and Notices of Trustee's Sale, all signed by parties without capacity, into the Official Records of the Los Angeles County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title, maliciously  made causing special damages to the Plaintiff's claim of title.

---

[1]See  Asset  Securitization  Comptroller's  Handbook  Nov.  1997 http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/assetsec.pdf

54.     A Substitution of Trustee by a non-Beneficiary is a violation of Civil Code 1095.

55.     A Substitution of Trustee by a non-Beneficiary in violation of Civil Code 1095 renders the Substitution of Trustee not merely Voidable, but in fact it is VOID.

56.     Additional allegations are made, such as violations of California Civil Code 1095, therefore neither Res Judicata nor Collateral Estoppel for Claim Preclusion applies here.

57.     This Cause of Action was not a Cause of Action in the Previous Complaint against ".

58.     Plaintiff has the ability to qualify for a modification or Covid19 forbearance..

59.     Plaintiff discovered this misrepresentation on July 25, 2021 when she contacted Steven Bernstein, J.D. C.E.O. of Foreclosure Defense Bloomberg Audits and is therefore not time barred.

60.     Plaintiff requests the Court to declare the Assignment VOID

61.     Plaintiff requests the Court to declare the Substitution of Trustee VOID.

62.     Plaintiff requests the Court to declare the Notice of Default VOID.

63.     Plaintiff requests the Court to declare the Notice of Sale VOID.

THIRD CLAIM FOR RELIEF
CALIFORNIA HOMEOWNERS BILL OF RIGHTS ("HBOR")
REMAINING ELEMENTS RENEWED WITH LATER LEGISLATION
(Defendants, SLS TRUST .)

64.     Plaintiff incorporates and realleges all of the allegations set forth in Paragraphs 1 through 63 as if fully set forth herein.

65.     At all times material hereto, SLS , has been a loan Trustee/mortgage servicer "(a) 'Mortgage servicer' means a person or entity who directly services a loan, or who is responsible for interacting with the borrower, managing the loan account on a daily basis including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent". "Mortgage servicer" also means a subservicing agent to a master servicer by contract.  (Cal. Civ. Code § 2920.5 (West)).

66.     At all times material hereto the Property has been owned and occupied by Plaintiff, a

18
COMPLAINT

borrower.  A "borrower" is "any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer".  (Cal. Civ. Code § 2920.5 (West)).

67.     SLS TRUST is a " servicer" pursuant to HBOR, even as amended in 2018.

68.     SLS TRUST and violated  HBOR.

69.     For example, prior to initiating the latest non-judicial foreclosure proceedings SLS TRUST named Mortgage Lender Services, Inc.as foreclosure trustee, and failed to contact Plaintiff to discuss foreclosure prevention alternatives.

70.     "(b) 'Foreclosure prevention alternative means a first lien loan modification or another available loss mitigation option"  (Cal. Civ. Code § 2920.5 (West)) as required pursuant to Civil Code 2923.5(a)(1) which states: "A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall  not record a notice of default pursuant to Section 2924 until both of the following:  (A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e), and  (B) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete application as defined in subdivision (d) of § 2924.18".

71.     § 2923.5(2), states:  "A mortgage servicer shall contact the borrower in person or by telephone … to assess the borrower's financial situation and explore options …to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment … and discussion of options may occur during the first contact, or at the subsequent meeting.. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency…"

72.     Plaintiff was not contacted by the mortgage servicer, and options to prevent

foreclosure were never brought up, or discussed.

73.     § 2923.5(b) states:  "A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

74.     Prior to initiating non-judicial foreclosure proceedings, Mortgage Lender Services and SLS Trust  were required, but failed, to verify the accuracy of information as required by Civil Code 2924.17(b) "Before recording or filing  any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

75.     Although required to, SLS TRUST and Mortgage Lender Services, Inc. refused and failed to, alert Plaintiff that he may request documentation demonstrating the Trust's authority to foreclose.

76.     Although required to, SLS TRUST and Mortgage Lender Services, Inc. failed to, provide post-Notice of Default with regard to the loan modification process.

77.     Though requested by Plaintiff, SLS TRUST and Mortgage Lender Services, Inc. failed to provide a single point of contact or "direct means of communication" as required by Civil Code 2923.7(a) "When a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact".

78.     Plaintiff had in fact requested a foreclosure prevention alternative, and was only provided with a contact that, even though Plaintiff attempted numerous times to contact, never answered the phone, or took the time to call Plaintiff back, even though Plaintiff left voicemails requesting call back.

79.     Plaintiff stood ready, willing, and able to avoid Default, had defendants fulfilled their obligations under the above stated Code sections, which defendants' failures caused material

violations and caused prejudice against Plaintiff.

80.     SLS TRUST and Mortgage Lender Services, Inc. negligently mishandled the mortgage modification process thus preventing Plaintiff from completing the mortgage modification process before the foreclosure date of Plaintiff's property.

81.     For example, the single point of contact person, if there really was such person, never answered the phone, from the numerous attempts Plaintiff called trying to reach the person; even though Plaintiff left numerous voice mails requesting call backs, the person never returned any calls.

82.     Plaintiff has already suffered damages as a result of Defendants SLS TRUST and Mortgage Lender Services, Inc.'s violations of HBOR and the Civil Codes named herein.

83.     Plaintiff did not discover many of the misrepresentations until receiving the 2019 Securitization Audit and therefore those claims were secreted from Plaintiff, and equitable tolling should apply.

84.     Further, Plaintiff has suffered extreme emotional distress as a result of Defendants' actions.

85.     The Emotional Distress is claimed as Tort, not Contract Violations.

86.     Meanwhile, injunctive and declaratory relief are also sought in this action.

<u>FOURTH CLAIM FOR RELIEF</u>

<u>VIOLATION OF BUS. AND PROF. CODE SECTION 17200, ET SEQ., TORTIOUS INTERFERENCE , CODE SECTION 16600</u>
(Against  Defendants.)

87.     Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

88.     These Defendants have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

89.     By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Bus. and Prof. Code section 17200, et seq.  and Tortious Interference Code Section 16600.

90.    Cal. Bus. and Prof. Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct that is likely to deceive and is fraudulent in nature.

91.    The conduct of both SLS trust and Mortgage Lender Services, Inc. as stated herein is in direct violation of Cal. Penal Code § 532(f)(a)(4).

92.    Defendants engaged in unfair, unlawful, and fraudulent business practices with respect to mortgage loan servicing and related matters.

93.    SLS, et al had actual knowledge that Sean & Cynthia Ponce had applied for a modification and Defendant tortiously interfered in the loan modification process . (See Exhibit A)

94.    Defendants knowingly, willingly, wantonly, with malicious intent, and in total disregard of Plaintiff's rights, falsified the Orange County California Records in order to be able to foreclose and cause Plaintiff the most harm they could, thereby making the award of punitive damages fair and just.

95.    "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. Saunders v. Superior Court, 27 Cal. 4th 832; Hewlett v. Squaw Valley, 54 Cal. 4th 499 (1977).

96.    Defendants failed to truthfully disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code § 1095.

97.    Defendants demanded and accepted payments for debts that were non-existent.

98.    Defendants reported payments as late to without the legal right or authority to do so.

99.    Defendants acted as a beneficiary without the legal authority to do so.

100.    Defendants facilitated, aided, and abetted the illegal, deceptive and unlawful enforcement of Plaintiff's Note and Mortgage and engaged in other illegal debt collection activities.

101.    SLS , acting as Plaintiff's Loan servicer, has been acting in a manner to mislead Plaintiff into believing that SLS trust had the authority to demand payments from them

102.    As alleged herein, Plaintiff's Note was not properly transferred to a securitized trust,

who seeks to cause their purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

103.   On information and belief, SLS trust does not have a perfected security interest in Plaintiff's Note such that trust or trustee   can enforce Plaintiff's obligation and/or collect the payments.

104.   Plaintiff alleges, on information and belief, that SLS t fraudulently enforced a debt obligation in which they had no pecuniary, equitable, or legal interest, SLS 's conduct is part of a fraudulent debt collection scheme.

105.   The conduct described above by SLS , was malicious because these defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Deed of Trust; however, despite such knowledge defendants continued to demand and collect Plaintiff's payments.

106.   On information and belief, at all times relevant, SLS and trustee had, and has, actual knowledge that Plaintiff's account was not accurate, but that Plaintiff would continue to make further payments based on Defendants' inaccurate account.  Plaintiff did continue to make payments based on these improper, inaccurate, and fraudulent representations.

107.   As More thoroughly described above, Defendants' acts and practices are unlawful; and their conduct continues to this date.

108.   As more fully described above, Defendants' acts and practices are likely to deceive members of the public; this conduct is ongoing and continues to this date.

109.   As more fully described above, Defendants' acts and practices are unfair and the harm caused by their conduct outweighs any benefit that their conduct may have; their conduct is ongoing and continues to this date.

110.   Plaintiff alleges that by engaging in the above described acts/practices as alleged herein, Defendants have violated several laws including Cal Bus. And Prof. Code § 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

111.   Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an

unfair competitive advantage over their competitors; the scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

112.    The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiff.

113.    By reason of the foregoing, Defendants have been unjustly enriched, by collecting payments that they are not entitled to, and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. And Prof. Code §§ 17203 and 17204.

114.    As a direct and proximate result of the actions of these defendants, and each of them, stated above, Plaintiff has been injured in that a cloud has been placed upon the title to Plaintiff's property and defendants have failed to remove this cloud.

115.    Plaintiff requests this Court to issue an order compelling SLS , et al,   possibly Mortgage Lender Services, LLC. , and any other entity who may be claiming an interest in and to Plaintiff's Property to take any and all actions necessary to remove the cloud they have placed upon Plaintiff's title and an order enjoining such defendants from taking such actions again in the future.

116.    As a direct and proximate result of the violations of Cal. Bus. and Prof. Code § 17200 by SLS trust and securitized trust  Plaintiff has suffered actual pecuniary damages, including, but not limited to civil liability, restitution, injunctive relief preventing Defendants from continuing to collect mortgage payments, and attorneys' fees, in an amount to be proven at trial.

117.    As a result of Defendants violations of Cal. Bus. and Prof.  Code § 17200, Plaintiff has been damaged in the following ways: (1) multiple parties may seek to enforce Plaintiff's debt obligation against him; (2) the title to Plaintiff's home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiff's home or get title insurance; (3) Plaintiff had been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; ( 4)  Plaintiff is unable to determine

whether they sent their monthly mortgage payments to the right party; ( 5) Plaintiff's credit and credit score have been damaged; and ( 6) Plaintiff has expended significant funds to cover the cost of attorneys' fees, audits, and in gathering information that Plaintiff should not have been forced to seek, court costs and related costs.

SIXTH CLAIM FOR RELIEF<br>ACCOUNTING<br>(Against  SLS  )

118.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

119.    Mortgage Lender Services, Inc., and securitized trust    as its purported agent, have held themselves out  to be Plaintiff's creditor and mortgage servicer. As a result of this purported relationship with Plaintiff, said Defendants have a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff.

120.    To state a cause of action for accounting, Plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is impracticable. 5 Witkin, Cal. Proc, 4th (1997).  Pleading, § 775, p.223.  The elements for a claim for accounting are:  (1)  fiduciary relationship or other circumstances appropriate to the remedy; and (2)  a balance due from the defendant to the plaintiff that can only be ascertained by an accounting.  See Witkin, California Procedure, Pleadings, § 776, p.233 (4th ed.).

121.    As a result of the aforementioned fraudulent conduct, Plaintiff paid SLS trust and Mortgage Lender Services, Inc.  her mortgage payments for a period of time, for the reasons stated herein, none of this money was actually owed to SLS trust or SLS TRUST Bank, .

122.    On numerous times ( Exhibit A)  Plaintiff  contacted Defendant and asked for  a loan modification or Covid19 forbearance..

123.    The amount of the money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions. Plaintiff is informed and believes and thereon alleges that the

amount due to her exceeds $2,000,000.

DECLARATORY RELIEF

124.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

125.    An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding his respective rights and duties in the subject note(s) and security instrument.

126.    Plaintiff requests a judicial determination of the rights, obligations and interest of the parties with regard to the subject property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the subject property.

127.    Plaintiff should be the equitable owner of the Subject Property.

128.    Plaintiff seeks to quiet title as of the date of the filing of this Complaint.

129.    Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that the Defendants be declared to have no interest estate, right, title or interest in the subject property and that the Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to Plaintiff's rights.

AGAINST ALL DEFENDANTS

130.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein,

131.    An actual case and substantial controversy exists between Plaintiff and the defendants with respect to their unfair or deceptive acts or practices and misleading misrepresentatives and non-disclosure of material facts relating to their debt collection practices.

132.    Defendants and their predecessors knowingly filed false documents in violation of Civil Code 1095 et al, refused to give Plaintiff's a modification and  refused to follow legal requirements to make a single point of contact available, , refused to obey the law as outlined above, all of which have ruined Plaintiff's health.

133.    he conduct of SLS , et al was done negligently or intentionally and in disregard for Plaintiff's Rights, thereby making the award of punitive damages just and appropriate. Which defendants dispute.

134.    Therefore, the parties herein have adverse legal interests of sufficient immediacy and reality to warrant the issuance of declaratory relief. Plaintiff, on behalf of himself and all others similarly situated, is entitled to adjudication declaring defendants' practice of perpetrating unfair or deceptive acts and misleading misrepresentations and non-disclosure of material facts

135.    Defendants continue their deceptive and misleading debt collection practices, and, therefore, defendants should be prohibited and enjoined from engaging in these practices in the future.

136.    WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against all defendants for four million dollars as follows:

137.    A declaration that SLS trust, or any purported assignee of the note other than . is not the proper Party to sue to collect receivables that it has securitized, and by doing so, it and its counsel, the legal defendants, violates Fair Debt Collection Practices Act (FDCPA)

138.    An Order enjoining Mortgage Lender Services, LLC.  and securitized rust, et al during the pendency of this action and permanently thereafter, from foreclosing with the current void recorded documents and setting aside foreclosure.

139.    (c)      An Order enjoining Mortgage Lender Services, Inc.  and trust, et al during the pendency of this action and permanently thereafter, from suing any class members to collect receivables that SLS  , et al  has securitized, prosecuting or maintaining such a collection proceeding, and/or otherwise representing to a current or former consumer account holder that it remained the creditor.

## JURY DEMAND

140.    Plaintiff hereby demands a trial by jury on the claims raised by Plaintiff herein.

## REQUEST FOR RELIEF

141.    WHEREFORE, Plaintiff, Sean & Cynthia Ponce trustee for Sean & Cynthia Ponce

27
COMPLAINT

2015 Trust, respectfully requests this Court, after jury trial on the merits, award damages as
requested above, and for such other relief as Plaintiff may show himself entitled.

Respectfully submitted ~~April~~ DEC 27, 2022

Sean & Cynthia Ponce trustee for Sean & Cynthia Ponce

PLAINTIFF,